NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL SHAWN BROWN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Civil Action No. 22-4494 (ZNQ)**<br><br>**MEMORANDUM OPINION** |

**BONGIOVANNI, United States Magistrate Judge**

Currently pending before the Court is Plaintiff Michael Shawn Brown's ("Plaintiff") motion seeking leave to file an Amended Complaint adding individual-capacity claims under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971), against Warden David E. Ortiz ("Ortiz") and Lieutenant Kenardo Evans ("Evans"), two Federal Bureau of Prisons ("BOP") officials. (Docket Entry No. 111). Defendant United States of America ("Defendant") opposes Plaintiff's motion. The Court has fully reviewed and considered the arguments made in support of and in opposition to Plaintiff's motion. The Court considers Plaintiff's motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78(b) and L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

The factual background of this matter is well known to both the parties and the Court. As such, it is not restated at length herein. Instead, the Court focuses on the background and procedural history most relevant to the instant motion to amend.

Plaintiff is an inmate. While he is currently incarcerated at Federal Correctional Institution – Coleman Low, Florida ("FCI Coleman Low"), at the time of the alleged incident underlying Plaintiff's claims, Plaintiff was incarcerated at Federal Correctional Institution, Fort Dix, New Jersey ("FCI Fort Dix"), a low-security federal correctional institution for male inmates. (Proposed Am. Compl. ¶¶ 2, 8; Docket Entry No. 111-2). On or about February 27, 2020, Plaintiff was placed in the Special Housing Unit ("SHU") at FCI Fort Dix. (*Id*. at ¶ 18). In March 2020, BOP medical staff issued Plaintiff a "double-front-cuff-only" medical accommodation because of his pre-existing right shoulder injury, involving degenerative joint disease and chronic pain that limited his range of motion. (*Id*. at ¶ 2). Plaintiff alleges that said medical accommodation was both listed in his medical file and visibly posted at eye level outside of his cell in the SHU. (*Id*. at ¶ 18). Defendant in its original Answer acknowledged that Plaintiff's medical duty status was temporarily modified to a "[c]uff from front while in SHU" in March 2020 and a "cuff only front" in June 2020. (Def. Ans. at 4; Docket Entry No. 24).

On August 12, 2020, Plaintiff was due to be transferred from FCI Fort Dix to a different federal correctional facility. (Proposed Am. Compl. ¶ 19). At around 12:30 a.m., Evans and approximately ten unknown correctional officers came to Plaintiff's cell to initiate the transfer procedure. (*Id*.) When they arrived, Evans instructed Plaintiff to place his hands behind his back to be handcuffed. (*Id*.) Plaintiff alleges that when he attempted to explain to Evans that he could not move his right arm behind his back and had a valid "double-front-cuff-only" medical accommodation approved by BOP of FCI Fort Dix, Evans replied, "Not tonight you don't." (*Id*.) Plaintiff further alleges that upon hearing Evans reply, he pointed Evans to the medical accommodation posted outside his cell door only for Evans to ignore the posted medical accommodation and again reply, "not tonight, you don't." (*Id*. at ¶ 21).

Despite having a valid "double-front-cuff-only" medical accommodation, Plaintiff complied with the demands to be handcuffed. (*Id.*) Plaintiff asserts that several officers were needed to successfully move his right arm behind his back so that handcuffs could be applied. (*Id.* at 22). Plaintiff further alleges that the effort caused him extreme pain and mental distress and was not in accordance with his medical accommodation. (*Id.*) After being handcuffed, Plaintiff was moved from his cell. While being moved, Plaintiff was forced to hold his belongings, which he claims weighed approximately 15 pounds, in his hands behind his back, exacerbating the pain in his right shoulder until he was later re-cuffed in front of his body. (*Id.* at ¶¶ 23-24).

Plaintiff filed his initial Complaint based on the August 12, 2020, rear-cuffing incident in the Northern District of West Virginia on June 6, 2022, as a *pro se* litigant. (Docket Entry No. 1). Plaintiff's case was transferred to this Court on July 7, 2022. *See* Order Transferring Case of 07/07/2022; Docket Entry No. 10. Plaintiff filed several requests for the appointment of *pro bono* counsel, which were denied. *See, e.g.*, Text Order of 11/09/2023 (denying Plaintiff's motion for *pro bono* counsel filed on 09/20/2023), Docket Entry No. 46; Letter Order of 10/01/2024 (denying Plaintiff's motions for *pro bono* counsel filed on 07/08/2024, 09/23/2024, and 09/24/2024), Docket Entry No. 64.[1] However, in denying Plaintiff's request for the appointment of counsel, the Court specifically noted that it was "mindful of the arguments raised by Plaintiff concerning his mental and physical health" and informed Plaintiff that if he submitted evidence establishing that he has been diagnosed with and continues to suffer from certain medical conditions, like Post Covid

[1] The Court appointed Seton Hall University School of Law's Conflict Management Program ("Seton Hall") to represent Plaintiff for the limited purpose of preparing for and engaging in settlement discussions. Order of 03/06/2024; Docket Entry No. 54. However, when settlement discussions proved unsuccessful, that representation ended and Seton Hall was terminated from this matter. Letter Order of 10/01/2024; Docket Entry No. 64.

Syndrome, the Court would consider a "renewed request for the appointment of *pro bono* counsel." Letter Order of 10/01/2024.

On January 13, 2025, Plaintiff submitted medical records to the Court. (Docket Entry No. 75). Plaintiff provided additional medical records to the Court on July 28, 2025. (Docket Entry No. 92). On July 30, 2025, Plaintiff filed a motion to amend his Complaint. (Docket Entry No. 93). On September 12, 2025, after reviewing the information submitted by Plaintiff, the Court determined that:

> Plaintiff has been diagnosed with several physical and mental health issues that may impact his ability to reasonably proceed *pro se* in this matter. Succinctly, and as already publicly disclosed by Plaintiff, he continues to suffer from a post COVID-19 condition as well as posttraumatic stress disorder and a recurrent major depressive disorder, among several other conditions. In addition, as the Court already determined, Plaintiff's claims have arguable merit in fact and law, and Plaintiff cannot afford counsel on his own behalf. Furthermore, recent developments in the case confirm that expert testimony will play an important role in this case. Under these circumstances, the Court finds that on balance, the *Tabron* factors weigh in favor of appointing Plaintiff *pro bono* counsel.

Letter Order of 09/12/2025 at 2; Docket Entry No. 98. As a result, the Court directed the Clerk of the Court to search for *pro bono* counsel available to represent Plaintiff for all purposes in this matter and also administratively terminated the case, including Plaintiff's pending motion to amend, while *pro bono* counsel was secured. *Id*.

On October 8 and 10, 2025, *pro bono* counsel filed notices of appearance on behalf of Plaintiff in this matter. (Docket Entry Nos. 99 and 101). On November 17, 2025, the administrative termination was lifted, and the matter was formally reopened. Text Order of 11/17/2025; Docket Entry No. 104. The Court held a telephone conference on November 25, 2025, during which it noted that newly appointed *pro bono* counsel would be afforded time to review discovery, determine whether Plaintiff would seek to amend the Complaint, identify experts, etc. During the

conference, the Court noted that Defendant indicated that no discovery was outstanding and that Defendant had retained experts and was prepared to set a schedule for the production of expert reports and depositions. *See* Text Minute Entry of 11/25/2025.

On January 30, 2026, in accordance with the guidance provided at the November 25, 2025, conference, Plaintiff submitted an update in which he indicated a desire to file an Amended Complaint. (Letter from James E. Cecchi, Esq., to Hon. Tonianne J. Bongiovanni of 01/30/2026; Docket Entry No. 107). The Court directed Defendant to advise whether it consented to the filing of an Amended Complaint by February 20, 2026. Text Order of 02/02/2026; Docket Entry No. 108. The parties almost immediately advised that Defendant did not consent to Plaintiff filing an Amended Complaint. (*See* Letter from James E. Cecchi to Hon. Tonianne J. Bongiovanni of 02/02/2026; Docket Entry No. 109). As a result, the Court granted Plaintiff permission to file a motion for leave to amend (Letter Order of 02/03/2026; Docket Entry No. 110), and Plaintiff filed the instant motion on March 6, 2026, seeking to add *Bivens* claims against Ortiz and Evans.

## II. ANALYSIS

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Third Circuit has shown a strong liberality in allowing amendment, favoring decisions on the merits rather than on procedural technicalities. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984); *see Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3rd Cir. 2001) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Although the decision to grant or deny leave to amend is within the discretion of the Court, that discretion must be exercised consistent with the liberal standard embodied in Rule 15(a)(2). *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886 (3d Cir. 1992); *see Rutter v. Rivera*, 74 F. App'x 182, 186 (3d Cir. 2003). Leave to amend under Rule 15(a) should be granted in the absence of undue

delay or bad faith by the movant, prejudice to the non-moving party, or futility of amendment. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

**A. Futility**

A court may deny a motion for leave to amend where the proposed amendment would be futile. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). An amendment is considered futile if the amended complaint would fail to state a claim upon which relief could be granted. *Travelers Indem. Co. v. Dammann & Co*., 594 F.3d 238, 243 (3d Cir. 2010). The futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Rule 12(b)(6). *Id*.

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civ. No. 09-3856, 2010 WL 918444, at *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)). Importantly, unless a proposed amendment is "clearly futile . . . denial of leave to amend is improper." *Morton Intern., Inc. v. A. E. Staley Mfg. Co.*, 106 F.Supp.2d 737, 745

(D.N.J. 2000). Further, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

The burden of establishing futility is on the party opposing the amendment and, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. *Pharm. Sales & Consulting Corp. v. J.W.S Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). "If a proposed amendment is not clearly futile, the denial of leave to amend is improper." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990). "This standard does not necessitate that parties undertake substantive motion practice concerning the proposed claim or defense." *Id.* "Instead, it requires only that the claim or defense have an adequate basis in fact or law, not being frivolous." *Id.*

A party seeking to amend a complaint after the statute of limitations has expired bears the burden of demonstrating that the proposed amendment satisfies the relation-back requirements of Rule 15(c). Rule 15 takes a liberal approach to pleading. *SEPTA v. Orrstown Fin. Servs.*, 12 F.4th 337, 344 (3d Cir. 2021). Consistent with that approach, "the relation-back doctrine under Rule 15(c) allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading." *Id.* Rule 15(c) states that "an amended pleading 'relates back to the date' of the initial pleading when, among other things, 'the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading.'" *Id.* at 344-45 (quoting Fed. R. Civ. P. 15(c)(1)(B)). Courts have found the Rule to embody "a 'clear preference . . . for merits-based decision making.'" *Id.* at 345 (quoting *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 328 (3d Cir. 2019)).

In advancing Rule 15's liberal approach toward proposed amendments, the Third Circuit has found that "amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004); *see United States v. Santarelli*, 929 F.3d 95, 102-03 (3d Cir. 2019) (citation omitted) (finding proposed amended allegations that restate original claim with greater particularity relate back to original pleading and fall within Rule 15(c)). With respect to the addition of new claims, new claims will relate back to the date of the original complaint only if they arise out of the conduct, transaction, or occurrence set out (or attempted to be set out) in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B).

Furthermore, pursuant to Rule 15(c)(1)(C), where "the amendment changes the party or the naming of the party against whom a claim is asserted," it will relate back:

> [I]f Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Importantly, when a party seeks to amend a complaint to add the United States, a federal agency, or a federal officer as a defendant, Rule 15(c)(2) provides that "the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency." *See Moore v. Walton*, 96 F.4th 616, 626 (3d Cir. 2024) (specifying Rule 4(m) service period for the original complaint determines the notice period for relation back under Rule 15(c)(1)(C)).

Reflecting the liberal standard of Rule 15(c), the Third Circuit's interpretation of "mistake" under Rule 15(c)(1)(C)(ii) includes situations where the plaintiff lacked knowledge of the proper party at the time of filing, provided the newly added party had notice and should have known of the action. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 208 (3d Cir. 2006) (holding that a "mistake" is no less a "mistake" when it flows from lack of knowledge as opposed to inaccurate description). This broader interpretation ensures that the Rule's purpose is fulfilled, even in cases involving a federal defendant. *Id.* Furthermore, Rule 15(c)(2) "creates an irrebuttable presumption that when the U.S. Attorney receives service of a complaint in which the U.S. would have been a proper defendant if named before the statute of limitations expires, no prejudice results to the U.S. in permitting a subsequent amendment formally naming it as the proper party." *Williams v. Army and Air Force Exchange Serv.*, 830 F.2d 27, 29 n.1 (1987) (quoting *Edwards v. United States*, 755 F.2d 1155, 1158 (5th Cir. 1985) (internal quotation marks omitted)). The irrebuttable presumption is only contingent on timely service on a designated government official. *Id.*

**1. Timeliness of Plaintiff's Proposed Claims**

The Court finds that Defendant has failed to carry its heavy burden of establishing that Plaintiff's proposed *Bivens* claims against Ortiz and Evans are futile because they are barred by the applicable two-year statute of limitations. As set forth above, to relate back, a proposed amendment must satisfy all three conditions of Rule 15(c)(1)(C). However, the notice requirement set forth in Rule 15(c)(1)(C)(i) does not require that the newly named defendant receive notice of the original complaint by service of process; instead, "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 195 (3d Cir. 2001). In the Third Circuit, notice can be actual or constructive.

*Id.* Further, in the Third Circuit, two methods of constructive notice are recognized. The first is the "shared attorney" method, which requires that the newly named defendant share an attorney with one of the defendants named in the original complaint. *Id.* at 196. The second is the "identity of interest" method, which requires that the parties be "'so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" *Id.* at 197 (quoting 6A Charles A. Wright et al., Federal Practice & Procedure § 1499, at 146 (2d ed. 1990)). Moreover, as also noted above, Rule 15(c)(2) "creates an irrebuttable presumption that when the U.S. Attorney receives service of a complaint in which the U.S. would have been a proper defendant if named before the statute of limitations expires, no prejudice results to the U.S. in permitting a subsequent amendment formally naming it as the proper party." *Williams*, 830 F.2d at 29 n.1. The irrebuttable presumption is only contingent on timely service on a designated government official. *Id.*

While Defendant argues that the claims against the newly proposed BOP officials are barred by the applicable two-year statute of limitations, suggesting that even if amendment were permitted, the claims would ultimately be dismissed under Rule 12(b)(6) as untimely, the Court finds that, under the prevailing law, Plaintiff's proposed *Bivens* claims against Ortiz and Evans are not clearly futile. Plaintiff timely filed the original complaint naming the United States as a defendant, and the United States received timely notice of the action within the Rule 4(m) period. As noted, Rule 15(c)(2) creates an irrebuttable presumption that no prejudice results from a later amendment naming the proper federal officer where the United States Attorney received timely service of the original complaint. *Williams*, 830 F.2d at 29 n.1. Even apart from that presumption, the record supports actual or constructive notice because Evans was identified in the original complaint, Ortiz shared an institutional relationship with Evans, and both Evans and Ortiz would

be represented by the same government counsel currently representing Defendant. Under these circumstances, there is an adequate basis in fact and law to find that Plaintiff's proposed *Bivens* claims against Ortiz and Evans may not be barred by the applicable two-year statute of limitations. As a result, the Court finds that Defendant has not established the futility of Plaintiff's proposed amendments on timeliness grounds.

**2. Qualified Immunity**

To the extent Defendant argues that Plaintiff's proposed claims are futile because Ortiz and Evans are entitled to qualified immunity, under the circumstances presented here, the Court finds that that argument is premature at this stage of proceedings. Generally, qualified immunity shields government officials from civil damages liability unless they violated a statutory or constitutional right that was clearly established at the time of the alleged conduct. *Taylor v. Barkes*, 575 U.S. 822, 825, 135 S. Ct. 2042, 192 L.Ed. 2d 78 (2015).

To determine if qualified immunity is an applicable defense, courts weigh two prongs: first, whether the facts alleged make out a violation of a constitutional right, and second, whether existing precedent clearly established that the alleged conduct violated that right. *District of Columbia v. Wesby*, 583 U.S. 48, 62-63, 138 S.Ct. 577, 199 L.Ed. 2d 453 (2018); *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85-86 (3d Cir. 2025). Because the second inquiry is fact-specific, it often "presents unique difficulties at the pleading stage." *Stringer*, 141 F.4th at 85. Indeed, "complaints typically lack the case-specific details needed to conduct the clearly established analysis" on a motion to dismiss. *Stringer*, 141 F.4th at 86. As the Third Circuit has recognized, this "is unsurprising given the parties' respective burden at the 12(b)(6) stage" and the fact that "[c]ourts do not 'apply a heightened pleading standard in cases in which a defendant pleads qualified immunity,' so a plaintiff 'has no pleading burden to anticipate or overcome a qualified immunity

defense.'" *Id*. (quoting *Thomas v. Indep. Twp*., 463 F.3d 285, 289, 294 (3d Cir. 2006)). Indeed, "the fact-bound nature of the clearly established inquiry combined with the dearth of facts at the pleading stage makes it 'difficult for a defendant to claim qualified immunity on the pleadings *before discovery* and before the parties (much less the courts)' uncover the precise contours of the official's conduct and the context in which it occurred." *Id.* (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). "In short, 'the fact-intensive nature of qualified immunity makes it often a bad fit for Rule 12(b)(6)'" and district courts must frequently "deny the motion to dismiss and seek to resolve qualified immunity at summary judgment." *Id.* at 86-87 (quoting *Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir. 2020)).

Here, Defendant argues that Ortiz is entitled to qualified immunity because Plaintiff fails to allege sufficient facts establishing Ortit's personal involvement in the alleged constitutional violation. The Court disagrees. Plaintiff plausibly alleges that Ortiz is liable under supervisory liability principles. A supervisor may be held liable where he directed others to violate a plaintiff's constitutional rights, including through the creation, authorization, or implementation of a policy or practice, or where he had actual knowledge of and acquiesced in his subordinates' unconstitutional conduct. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (2010); *Carter v. Taylor*, 557 F. Supp. 2d 469, 473 (2008). Plaintiff alleges that ten officers, acting under the supervision and orders of Ortiz and Evans, violated his Eighth Amendment rights by failing to accommodate his serious medical needs. Viewing these allegations in the light most favorable to Plaintiff, they plausibly allege a constitutional violation based on deliberate indifference to a serious medical need. That is all that is required at this stage, and qualified immunity does not render Plaintiff's proposed claims against Ortiz and Evans futile. *See Stringer*, 141 F.4th at 85-87

### 3. Failure to Exhaust Administrative Remedies

The Prisoner Litigation Reform Act (the "PLRA") provides that a federal inmate may not bring suit for damages against an individual prison official unless the inmate first fully exhausts administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed. 2d 12 (2002) (recognizing exhaustion requirement applies in *Bivens* suits). Failure to exhaust is an affirmative defense, and a plaintiff is not required to plead or prove exhaustion in the complaint at the pleading stage. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Rather, the burden to show a failure to exhaust is placed on the defendant and often requires discovery. *See id*. at 295-96. Prior to discovery, dismissal is appropriate only where the failure to exhaust is apparent from the face of the pleading. *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (holding that without discovery there is insufficient evidence to show plaintiff failed to exhaust administrative remedies); *accord Ray*, 285 F.3d at 295-96.

Defendant argues that the record does not show completion of the required four-step remedy process mandated by the PLRA; the BOP records allegedly do not show a grievance relating to the claims; and Plaintiff does not affirmatively allege compliance with the PLRA exhaustion requirements. However, as noted, the relevant inquiry at this stage is whether it is apparent from the face of Plaintiff's proposed Amended Complaint that Plaintiff failed to exhaust available administrative remedies. *See Ray*, 285 F.3d at 295 (holding that dismissal on exhaustion grounds is premature if the issue cannot be resolved from the pleadings alone and the parties have not yet had the benefit of discovery). To this end, as Plaintiff argues, the pleadings contain no facts demonstrating a failure to exhaust. From the face of the proposed Amended Complaint, it is not apparent that Plaintiff failed to exhaust all available administrative remedies. Therefore, Plaintiff's

proposed *Bivens* claims against Ortiz and Evans are not clearly futile. The Court shall not deny leave to amend on this ground.

**4. Availability of the Remedy**

Defendant argues that Plaintiff's proposed *Bivens* claims against Ortiz and Evans are futile for lack of an available remedy. Defendant's futility argument rests on the Third Circuit's recent decision in *Muniz v. United States*, 149 F.4th 256, 261 (3d Cir. 2025). The Court, however, notes that the law on this issue remains unsettled. Indeed, following a circuit split, the Supreme Court granted a writ of *certiorari* in *Nielsen v. Watanabe* to review the issue of whether the mere availability of BOP's administrative remedy program bars *Bivens* relief under the Eighth Amendment.

The Court finds that where the law remains unsettled, particularly where the Supreme Court has granted *certiorari* to resolve a circuit split, the preferable course is to grant leave to amend and address the legal sufficiency of the amended pleading after the controlling legal issue has been resolved. *See Prudential Ins. Co. v. United States Gypsum*, 711 F. Supp. 1244, 1264 (D.N.J. 1989) (finding it premature to rule on a developing area of the law and noting the parties may raise the issue through an appropriate motion should the law become more settled). In light of the unsettled state of the law, the Court cannot assess the ultimate legal viability of Plaintiff's *Bivens* claims now. *Prudential*, 711 F. Supp. at 1264. However, at this stage of the proceedings, it finds that the *Muniz* decision does not render Plaintiff's proposed amendments clearly futile.

**B. Undue Delay and Undue Prejudice**

In determining whether there has been undue delay, courts consider both the length of the delay and resulting prejudice to the opposing party. *Long*, 393 F.3d at 399. Although significant lapses of time may weigh against the moving party, delay alone is insufficient to deny amendment

absent a showing of prejudice, bad faith, or dilatory motive. *See id*. at 399; *Cureton*, 252 F.3d at 273 (3d Cir. 2001); *see also Adams*, 739 F.2d at 868; *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). The burden of establishing undue prejudice rests with the non-moving party. *Long*, 393 F.3d at 400. This burden may be met by showing that allowing an amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent [the opposing party] from bringing a timely action in another jurisdiction." *Id.*

Despite Defendant's arguments to the contrary, the Court finds that no undue delay or undue prejudice will result if Plaintiff is permitted to amend his Complaint to add his proposed *Bivens* claims against Ortiz and Evans. In reaching this conclusion, the Court is mindful of the fact that Defendant believed no fact discovery was outstanding and was prepared to discuss a schedule for the production of expert reports and depositions at the time Plaintiff's motion to amend was filed. *See* Text Minute Entry of 11/25/2025. The Court, however, is equally mindful that when it appointed counsel for Plaintiff, it did so specifically advising the parties that after counsel was secured, the Court would "confer with the parties regarding how to proceed with the case." Letter Order of 09/12/2025; Docket Entry No. 98. Likewise, once specific counsel was appointed, the Court directed *pro bono* counsel to confer with Plaintiff to "propose how to move forward." Letter Order of 10/10/2025; Docket Entry No. 100. Further, when discussing the matter with both parties, the Court specifically held that *pro bono* counsel would be "afforded time to review discovery, determine whether they will seek to amend the complaint, identify experts, and so forth." Text Minute Entry of 11/25/2025. It is clear from the Court's interactions that the Court was contemplating Plaintiff needing some additional fact discovery after *pro bono* counsel was appointed.

More importantly, while permitting Plaintiff to add *Bivens* claims against Ortiz and Evans will require some additional fact discovery, there is no evidence that the additional discovery will be expansive, significantly expensive, or time consuming. Additionally, the discovery conducted to date would not be wasted because Plaintiff's proposed new claims arise from the same underlying transaction or occurrence as his original claims. *United States v. Kushner*, 2018 WL 2230552, at *2 (D.N.J. May 15, 2018) (holding no prejudice where defendants already expended resources on conducting discovery and preparing a defense). Lastly, there is no evidence of bad faith. Accordingly, the Court finds that Defendant will not be unfairly prejudiced if Plaintiff is permitted to amend his pleading to add his proposed *Bivens* claims against Ortiz and Evans.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion seeking leave to file an Amended Complaint adding individual-capacity claims under *Bivens* against Ortiz and Evans is **GRANTED**. An appropriate Order follows.

Dated: October 29, 2026

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**